Charles Dennis Williams v. Commissioner. Delbert R. Williams and Mildred Williams v. Commissioner.
Williams v. Commissioner
Docket Nos. 90538, 90539.
United States Tax Court
T.C. Memo 1962-265; 1962 Tax Ct. Memo LEXIS 43; 21 T.C.M. (CCH) 1413; T.C.M. (RIA) 62265; November 15, 1962
Dean M. Alexander, Esq., 814 Executive Bldg., Portland, Ore., for the petitioners. William J. *44 Luff, Jr., Esq., and John D. Picco, Esq., for the respondent. FAY
Memorandum Findings of Fact and Opinion FAY, Judge: The Commissioner determined deficiencies in the petitioners' income taxes for 1955 of $8,033.76 at Docket No. 90538 and $5,473.27 at Docket No. 90539. The only issue for decision is whether the petitioners may exclude from income in the taxable year 1955 the amount added to a dealer reserve, or, in the alternative, claim a deduction of the amount added to the reserve as a reasonable addition to a reserve for bad debts. Findings of Fact Petitioners Charles Dennis Williams and Delbert R. Williams are brothers and during the year 1955 engaged in a partnership in the business of buying and selling used cars under the assumed business name of Williams Used Cars. Petitioner Mildred Williams is the wife of Delbert and is involved herein solely by reason of having filed a joint return for the year 1955 with Delbert. Whenever the term "petitioners" is used herein, it will refer solely to the male petitioners. Williams Used Cars had its principal place of business during 1955 at 3225 N.E. Union Avenue, Portland, Oregon. The partnership return of Williams *45 Used Cars, the individual income tax return of Charles and the joint income tax return of Delbert and Mildred for 1955 were filed with the district director of internal revenue, Portland, Oregon, on a calendar year basis. The partnership income tax returns were filed on a hybrid method of accounting. Inventories were taken into account in computing gross profits, but expenses were reported on the cash basis. The petitioners through their partnership, Williams Used Cars, had been in the business of selling used automobiles since 1953. Prior to 1955, they had made sales to customers on credit, but until that year they had followed a conservative credit policy. They would usually require a down payment equal to one-third of the purchase price and would sell only to persons with acceptable credit records. In 1955, in order to increase their gross sales, the petitioners adopted a more liberal credit policy. They would require a down payment of only 10 percent of the purchase price and would finance sales to anyone without a credit check. Sales were made under conditional sales contracts. Due to the high risk of loss, a finance charge was made amounting to 8 to 10 percent per year of *46 the unpaid balance of the purchase price. Because of this credit policy, the petitioners' gross sales increased from $152,038.45 in 1954 to $574,491.57 in 1955. The petitioners assigned nearly all of their conditional sales contracts to the First State Bank of Milwaukie, Oregon, with full recourse. When a contract was assigned to the bank, it would immediately credit the petitioners' account with the principal amount of the loan. For its services, the bank would charge 5 percent per year of this principal amount for new cars and 6 percent per year of this principal amount for used cars. Accordingly, the bank would retain as its finance charge a portion of the sum shown as the finance charge on the sales contract. The remainder of the finance charge would be retained by the bank in a reserve account, to the credit of the petitioners, as security for the petitioners' obligation to reimburse the bank for any losses under the contracts. The bank relied on the petitioners to make good any losses on these contracts; it did not rely on the credit of the individual purchasers of automobiles. During 1955 the petitioners did not withdraw any portion of their reserve account from the bank. *47 They were, however, allowed to put $30,000 of the reserve fund into an account that bore interest. The principal amount of the account continued to be held by the bank as a reserve against losses on petitioners' contracts. The petitioners did not at any time have on the books of their partnership an account constituting a reserve for bad debts. When they were required to reimburse the bank for losses on their contracts, they drew a check to the bank on their general checking account. The amount of the check was debited to "purchases" on the books of the partnership and thus brought about a reduction in income for the year in which the check was drawn. The petitioners neither sought nor were granted permission of the Commissioner to account for bad debts on a reserve basis. The petitioners did not include in their gross income on their income tax returns for 1955 the amount retained by the bank as a reserve during that year. The respondent has determined that the amount added to the reserve is includable in gross income. On August 30, 1960, the petitioners made an election pursuant to section 3(a) of the Dealer Reserve Income Adjustment Act of 1960, 74 Stat. 124. [1]
*48 Opinion The parties are agreed that petitioners are to be treated as on the accrual basis for the purpose of determining whether the reserve additions for 1955 should be considered income to the petitioners in 1955. The petitioners contend that the reserve held by the bank in 1955 should not be considered income to them in that year because it represented finance charges rather than principal of the loan. In Commissioner v. Hansen, 360 U.S. 446 (1959), the Supreme Court ruled that an accrual basis taxpayer was required to include in income the amount credited to a dealer reserve account in the year in which it was credited. However, the Supreme Court did not consider whether additions to the account would be includable in the year credited if the sums represented finance charges rather than principal. However, since the Hansen case, this Court has ruled on this question and has held additions to dealer reserve accounts includable in income in the year credited even though such additions represented finance charges. General Gas Corporation, 33 T.C. 303 (1959), affd. 293 F. 2d 35 (C.A. 5, 1961), certiorari denied 369 U.S. 816 (1962). *49 Therefore, we must rule for the respondent on this question. The petitioners contend, however, that if the 1955 credits to the reserve account are income in that year they should be allowed to deduct a sum equal to that amount as a reasonable addition to a reserve for bad debts. They urge that in substance the dealer reserve account is a reserve for bad debts. Section 166(a) of the Internal Revenue Code of 1954 allows a deduction for debts that become worthless during the taxable year. Section 166(c) of the Code allows (in the discretion of the Secretary or his delegate), a deduction for a reasonable addition to a reserve for bad debts, in lieu of the deduction for debts becoming worthless during the taxable year. However, a taxpayer must make an election to account for bad debts on a reserve basis. The evidence here does not justify a holding that the petitioners adopted the reserve method of handling bad debts. Atlantic Bank & Trust Co., 23 B.T.A. 1219 (1931), affd. 59 F. 2d 363 (C.A. 4, 1932). Finally, the petitioners contend that section 481(a)[2] is applicable to them in the year in issue and that, therefore, they are entitled *50 to establish a reserve for bad debts to "prevent amounts from being duplicated or omitted." We need not decide whether this section applies to the petitioners because it would have no bearing on the issue here. Requiring the petitioners to continue accounting for bad debts in the year in which they become worthless would not result in the duplication or omission of any amounts. *51 Decisions will be entered for the respondent. Footnotes
1. SECTION 2. PERSONS TO WHOM THIS ACT APPLIES. This Act shall apply to any person who, for his most recent taxable year ending on or before June 22, 1959 - (1) computed, or was required to compute, taxable income under an accrual method of accounting. (2) treated any dealer reserve income, which should have been taken into account (under the accrual method of accounting) for such taxable year as accruable for a subsequent taxable year, and (3) before September 1, 1960, makes an election under section 3(a) or 4(a) of this Act. SEC. 3. ELECTION TO HAVE SECTION 481 APPLY. (a) General Rule. - If - (1) for the year of the change (determined under subsection (b)), the treatment of dealer reserve income by any person to whom this Act applies is changed to a method proper under the accrual method of accounting (whether or not such person initiated the change), (2) such person makes an election under this subsection, and (3) such person does not make the election provided by section 4(a), then, for purposes of section 481 of the Internal Revenue Code of 1954↩, the change described in paragraph (1) shall be treated as a change in method of accounting not initiated by the taxpayer.
2. SEC. 481. ADJUSTMENTS REQUIRED BY CHANGES IN METHOD OF ACCOUNTING. (a) General Rule. - In computing the taxpayer's taxable income for any taxable year (referred to in this section as the "year of the change") - (1) if such computation is under a method of accounting different from the method under which the taxpayer's taxable income for the preceding taxable year was computed, then (2) there shall be taken into account those adjustments which are determined to be necessary solely by reason of the change in order to prevent amounts from being duplicated or omitted, except there shall not be taken into account any adjustment in respect of any taxable year to which this section does not apply unless the adjustment is attributable to a change in the method of accounting initiated by the taxpayer.↩